# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARYULES BIVENS, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 00-CV-7327 |
| v. | ) | |
| | ) | |
| DONALD HULICK, Warden, | ) | Judge Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On December 11, 2002, Aryules Bivens petitioned this court for a writ of habeas corpus challenging his 1985 convictions for escape and armed robbery. These convictions stem from Bivens's participation in a successful escape from the maximum security division of the Cook County jail on March 23, 1984. As grounds for habeas relief, Bivens asserts that 1) his trial counsel was ineffective for failing to call exculpatory witnesses to testify that petitioner was forced to participate in the escape; 2) the state postconviction trial and appellate courts improperly relied on the doctrine of waiver in disposing of petitioner's ineffective assistance of counsel claims; 3) he was denied a fair trial because the trial court declined to instruct the jury on the defense of necessity; 4) his successive postconviction petition raised sufficient allegations to merit an evidentiary hearing; and 5) his postconviction trial counsel was ineffective for failing to obtain affidavits and other necessary documentation to support the claims raised on state postconviction review. For the reasons discussed below, Bivens's petition is denied.

# I. BACKGROUND[1]

On the night of March 23, 1984, Bivens and five other inmates–Reginald Mahaffey, Jerry Mahaffey, Brian Daniels, Raymond Greer, and Gregory Hill–successfully escaped from the maximum security division of the Cook County jail. Armed with at least two firearms, the escapees forced the Sheriff's officers on duty to give them their uniforms, badges, and personal property. The inmates then proceeded through tunnels out of the maximum security division and into another section of the jail, then dispersed. Bivens and Hill, posing as officers, proceeded through two other security checkpoints and out of the jail complex, where they commandeered a neighborhood resident's car, which was double parked nearby. With one of the car's occupants, who believed Bivens and Hill to be police officers, in the back seat, Bivens and Hill fled to Chicago's south side, where first Hill then Bivens exited the car. Bivens was found in hiding and arrested four days later. All of the other escapees were ultimately apprehended as well,[2] and all but Bivens pled guilty to the escape.

At trial, Bivens testified in his own defense, claiming that he was forced to cooperate with the escape because he had knowledge of the jail's tunnel system. In particular, Bivens testified that Reginald Mahaffey approached Bivens with a gun and said, "You are coming with us. You are going to show us the way out." Bivens claims that he was not armed at any point during the escape. Bivens further testified that the Mahaffey brothers, guns in hand, ordered Officer Riley, one of the guards on duty, to disrobe, and that they ordered Bivens to don Riley's

---

[1] Unless otherwise noted, the factual summary below is based on *People v. Bivens*, 156 Ill.App.3d 222, 509 N.E.2d 640 (Ill.App.Ct. 1987), in which the Illinois Appellate Court upheld the convictions Bivens challenges here. The Appellate Court's factual determinations in that case are presumed to be correct for the purpose of this petition. *See Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003).

[2] Hill turned himself in to a television news reporter. Reginald Mahaffey was apprehended while still within the jail complex. It is not clear from the available portions of the record where and when the remaining escapees were recaptured.

uniform. Bivens stated that he was then alone with Riley for a brief period,[3] during which time he put on Riley's uniform, badge, and wristwatch and took Riley's wallet. Bivens claims to have told Riley during this time, "Nobody is going to hurt you. I don't even want to be in this myself," to which Riley replied, "Well, man, you know if you don't go, we are going to kick ass after this anyway." Bivens testified that this statement, together with Bivens's previous observation of the rough manner in which the guards sometimes treated inmates, caused him to fear reprisal from the jail guards if he did not proceed with the escape.

Officer Riley testified that Bivens had indeed told him, "we don't want to hurt you,"[4] but otherwise denied the exchange Bivens described. Riley also testified that Bivens was holding "what appeared to be a weapon" at some point during the escape. Officer Langdon, another guard on duty at the time, testified that Bivens had pointed a gun at him and forced him into the day room area of the maximum security division, where someone ordered Langdon to remove his uniform.

In total, approximately thirty witnesses testified for the State about various aspects of the escape.[5] None of the other escapees testified for either the State or the defense.

At the close of the trial, Bivens requested jury instructions on the defenses of both compulsion and necessity, but he received only the compulsion instruction. The jury convicted Bivens of one count of escape and five counts of armed robbery.[6] Bivens appealed his

---

[3]Bivens stated in his 1998 PLA that he was alone with Riley at this point, citing to his own trial testimony. *See* Exh. O to Respondent's Amended Answer, at 10-11.

[4]The facts and quotations in this paragraph are taken from Bivens's PLA *See* Exh. O to Respondent's Amended Answer, 6-8.

[5]The Appellate Court stated that thirty-four witnesses testified at the trial. The available materials account for at least twenty-three State witnesses. It is not clear from the record whether the defense presented any witnesses other than defendant.

[6]Bivens was also convicted on multiple other counts not at issue here, one of which was reversed on appeal.

conviction and sentence, claiming that the trial court erred in refusing to instruct the jury on the defense of necessity.[7] The Illinois Appellate Court upheld the escape and armed robber conviction in *People v. Bivens*, 156 Ill.App.3d 222, 509 N.E.2d 640 (Ill.App.Ct. 1987). Bivens filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, which was denied.

In a postconviction petition filed December 24, 1991, Bivens asserted, for the first time, that his trial counsel had been ineffective for failing to investigate and call as witnesses escapees Greer, Hill, Daniels, and Jerry Mahaffey. This claim and others Bivens raised in a supplementary postconviction petition were denied.[8] Bivens appealed, raising the previously presented claims along with the additional claim that postconviction trial counsel was ineffective for failing to append affidavits to the petition, amend it, or adequately investigate the postconviction claims. The Illinois Appellate Court affirmed the denial, and the Illinois Supreme Court denied Bivens's PLA.

While his PLA on the denial of his postconviction petition was pending before the Illinois Supreme Court, Bivens filed a successive postconviction petition, again asserting a claim of ineffective assistance of trial counsel. In support of his successive petition, Bivens attached an affidavit from Brian Daniels, dated May 20, 1987, in which Daniels averred that he and Gregory Hill had planned the escape and forced Bivens and other inmates to participate. Specifically, the Daniels affidavit states, *inter alia*: "The affiant on March 23, 1984 along with Gregory Hill forced several detainees to take involvement in the escape, which included Aryules Bivens," and "The affiant at gun-point forced several Cook County Officers to disrobe and forced Aryules Bivens at gun-point to put on the uniform of Officer Riley." Bivens's successive postconviction petition was denied, and the denial was affirmed on appeal. Bivens's PLA to the

---

[7]Bivens raised two other claims not relevant here.

[8]The petition was first erroneously denied summarily, and on appeal was remanded to the trial court, where it was rejected on the merits.

Illinois Supreme Court was also denied.

Having thus exhausted his state court remedies, Bivens sought habeas relief in this court.

## II. ANALYSIS

The disposition of Bivens's habeas petition has been a long time in coming. As discussed at length in the court's previous orders, the resolution of Bivens's claims has been delayed by several factors, including Bivens's desire to conduct additional discovery based on evidence he adduced after his conviction, followed by a protracted dispute stemming from the State's inability to produce relevant portions of the trial record or a reasonable substitute therefor. *See, e.g.*, *Bivens v. Briley*, No. 00 C 7327, 2004 WL 1718437 (N.D. Ill., July 27, 2004) (order granting additional discovery based on new evidence); *Bivens v. Battaglia*, No. 00 C 7327 (N.D. Ill., Jan. 17, 2007) (order acknowledging Respondent's inability to provide full trial transcript and ordering Respondent to produce narrative summary of evidence presented); *Bivens v. Hulick*, No. 00 C 7327 (N.D. Ill., Aug. 15, 2008) (order acknowledging Respondent's inability to produce narrative summary and granting opportunity for additional briefing). To understand the significance of the new evidence, and to appreciate why the incompleteness of the evidentiary record has been particularly problematic in this case, a short discussion of the nature of Bivens's claims and the law applicable to proof of those claims is required.

**A.      Ineffective Assistance of Trial Counsel and Actual Innocence**

Bivens's claim of ineffective assistance of trial counsel has driven the course of the over eight years of proceedings in this court. Although this claim is at the root of Bivens's request for relief, Bivens concedes that he did not raise it on direct appeal to the Illinois Appellate Court, and he does not contest respondent's assertion that that claim is procedurally defaulted.

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant a state prisoner habeas relief unless the prisoner has exhausted his or her state court remedies. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999).

Accordingly, federal courts sitting on habeas review may entertain the merits only of federal claims that were fairly presented in the state courts throughout "one complete round of the State's established appellate review process." *Boerckel*, at 845. All other claims are procedurally defaulted, and "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004).

Bivens does not argue that his failure to raise ineffective assistance of trial counsel on direct appeal is excused by cause and prejudice. Rather, he contends that his procedural default must be overlooked because his case falls within "the narrow class of cases...implicating a fundamental miscarriage of justice," *Schlup v. Delo*, 513 U.S. 298, 314-25 (1995) (ellipses in original), because new evidence shows that he is actually innocent of the crimes for which he was convicted. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639 (1986).

Actual innocence, however, is not itself an independent constitutional claim capable of supporting a claim for habeas relief. *Schlup,* at 315. Instead, it is a "gateway" claim, which, if proven, allows a habeas petitioner to have an otherwise barred constitutional claim adjudicated on the merits. *Id.* The key to the gate, however, is difficult to come by. As Bivens acknowledges, before the court may entertain the merits of his substantive claim, he must prove actual innocence by showing that "no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, at 327.

The very formulation of the actual innocence standard reveals how exacting it is. The Supreme Court underscored this in *House v. Bell*, 547 U.S. 518, 538 (2006) ("it bears repeating that the Schlup standard is demanding and permits review only in the 'extraordinary' case")

(quoting *Schlup* at 327). The *House* court emphasized, in particular, that the new evidence must be "reliable," 547 U.S. at 536, a point the Seventh Circuit illustrated in another case involving an underlying ineffective assistance of counsel claim: "to demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (citing *Schlup*, at 324). Nevertheless, the new evidence need not conclusively exonerate the petitioner, and the *Schlup* standard may be met even where "some aspects of the State's evidence...still support an inference of guilt." *House*, at 553-54. The court must consider "all the evidence, old and new" and make "a probabilistic determination about what reasonable, properly instructed jurors would do." *House*, at 538 (internal quotations omitted).

Bivens offers two new items of evidence to support his claim of actual innocence: the Daniels affidavit, first submitted in support of his successive postconviction petition, and a similar affidavit signed by Ray Greer, another escapee, on October 1, 2002. Bivens argues that these affidavits are reliable because they are eyewitness accounts of the events leading to the escape and because they are largely consistent with each other.[9] Bivens also contends that the affidavits are not controverted by any evidence in the available trial record and that the affidavits support Bivens's defenses of compulsion and necessity. Accordingly, Bivens argues, no reasonable juror could fail to have a reasonable doubt as to Bivens's guilt.

Respondent urges the court to reject Bivens's actual innocence claim because: 1) the

---

[9]Bivens also cites the court's opinion in *Bivens v. Briley*, 2004 WL 1718437 at *3 (July 29, 2004) in support of his claim of reliability. As the court clarified in its subsequent order of August 21, 2008, the court's earlier remarks regarding the affidavits were made in the context of a discovery dispute, where the issue was whether Bivens was entitled to additional discovery based upon the affidavits. As should have been apparent, and as was certainly made clear subsequently, the court did not intend at that time make any finding as to the merits, including the issue of the ultimate reliability of the affidavits.

affidavits cannot be considered "reliable" evidence; 2) "factual" rather than "legal" innocence is required to satisfy the *Schlup* standard; and 3) the available evidence suffices to show that Bivens falls far short of the standard articulated in *Schlup* and *House* in any event. The court agrees with respondent's first and third points.[10]

The Daniels and Greer affidavits, standing alone, simply do not constitute reliable evidence of Bivens's actual innocence. Setting aside the fact that the affidavits were signed roughly thirteen and eighteen years after the events in question, by individuals who, presumably, had little to lose for acknowledging their involvement in a crime to which they had already pled guilty, *see United States v. Benavente Gomez*, 921 F.2d 378, 383 (1st Cir. 1990) ("attempts by one defendant to take full responsibility after trial and conviction are common and are viewed with skepticism"), the affidavits have not been corroborated by *any* additional evidence that might have surfaced after July of 2004, when the court granted Bivens leave to take additional discovery. In that order, the court allowed Bivens to compel the production of: 1) investigatory reports relating to the escape; 2) disciplinary and parole records concerning the other detainees who participated in the escape; 3) the written confession of Raymond Greer; and 4) a taped television interview of Raymond Greer. The order also granted Bivens leave to take the depositions of Daniels, Greer, Hill, and Gary Ravitz, Bivens's trial counsel, as well as to inspect the State's trial files. Despite this broad grant of additional discovery, Bivens has not come forward with a single piece of evidence to corroborate the Daniels and Greer affidavits.

Moreover, even setting aside the inherent unreliability of the affidavits, the substance of the Daniels affidavit conflicts in important respects with Bivens's testimony at trial. The Daniels affidavit states that Daniels himself "forced Aryules Bivens at gun-point to put on the uniform of Officer Riley." Yet, at trial, Bivens stated that although he saw Daniels with a gun at one point,

---

[10]Because these grounds are sufficient to deny Bivens's motion, the court expresses no opinion on respondent's second point.

the gun was trained on Officer Langdon. Bivens testified that Daniels then "passed the gun" to Jerry Mahaffey, and that "the Mahaffeys had the two guns" while ordering Bivens to put on Officer Riley's uniform.[11] Similarly, Bivens stated that after he had donned Riley's uniform and taken Riley's personal belongings, Reginald Mahaffey returned to the area and pointed his gun at Bivens. Bivens did not testify, nor does the available evidence suggest, that *Daniels* held a gun to Bivens at any point. The Greer affidavit, for its part, is unspecific as to which of the escapees actually threatened Bivens, stating merely that Bivens was not armed, and that he was forced at gunpoint to participate in the escape.

In sum, not only do the Daniels and Greer affidavits conspicuously lack the hallmarks of reliability, the veracity (or, at least, the accuracy) of the Daniels affidavit is also suspect in light of inconsistencies between the affidavit and Bivens's trial testimony, while the Greer affidavit is generally unpersuasive for its complete lack of detail. The affidavits alone simply cannot, viewed in light of the whole of the evidence available, "demonstrate innocence so convincingly that no reasonable jury could convict." *Hayes,* 403 F.3d at 938.

The jury heard the State's evidence, which included testimony that Bivens was armed at different points during the escape.[12] The jury also heard Bivens testify that, sometime shortly after leaving the armed Mahaffey brothers in a different area of the jail complex, he proceeded past two security checkpoints accompanied only by Hill, who Bivens does not contend was armed or threatened him at any point in the escape. The jury also heard Bivens testify that he was forced to participate in the escape, and was instructed on the defense of compulsion. The

---

[11]*See* Exh. O to Respondent's Amended Answer, at 10-11.

[12]In Bivens's brief in support of his direct appeal, Bivens acknowledged, "there was testimony that at one point, Aryules Bivens was seen holding a pistol." *See* Exh. B to Respondent's Amended Answer, at 5. In addition, the transcript of Alejandro Rubio's testimony is in the record (Rubio was the backseat passenger in the car Bivens and Hill used to escape), and reflects that although Rubio did not see Bivens with a weapon, Bivens stated that he had a gun. *See* Exh. Z to Respondent's Amended Answer, at 202.

jury concluded that Bivens was guilty. While the Daniels and Greer affidavits do lend some support Bivens's trial testimony, they are marginally reliable, questionably accurate, and overall fail to persuade the court that no reasonable juror would have convicted Bivens in their light.

Accordingly, Bivens has not made a showing of actual innocence sufficient to overcome the procedural bar of his ineffective assistance of trial counsel claim.

**B.     Bivens's Remaining Substantive Claims**

Bivens's remaining claims for habeas relief can be disposed of without extended discussion. In fact, Bivens does not even address any of the substantive arguments–save one–that respondent raises in its amended answer. Nevertheless, for the sake of completeness, the court will briefly address each asserted ground.

1. <u>The State Postconviction Trial and Appellate Courts Improperly Relied on the Doctrine of Waiver in Disposing of Petitioner's Ineffective Assistance of Counsel Claims</u>

Respondent argues that this claim presents no constitutional issue but merely challenges the state appellate courts' application of state rules of procedure and therefore is not cognizable on federal habeas review. Bivens does not reply to this argument, perhaps because in the context of his actual innocence claim, he concedes the basis on which the appellate court held the claim to be waived: that Bivens did not raise it on direct appeal. In any event, respondent accurately characterizes the first of two alternative bases for the appellate court's holding, *see People v. Bivens*, No. 1-96-0815, at 4 (Ill.App.Ct. April 3, 1998) (Rule 23 Order) (Exh. N to Resp. Am. Ans.), and is correct as a matter of law. *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citations omitted). Bivens is not entitled to habeas relief based on this claim.

2. <u>Bivens Was Denied a Fair Trial Because the Trial Court Declined to Instruct the Jury on the Defense of Necessity</u>

Respondent asserts that this claim is procedurally defaulted because although Bivens presented it in his opening brief on direct appeal, he did not present it in his PLA requesting review of the appellate court's decision rejecting the claim. *See* PLA, *People v. Bivens* No. 85873 (Exh. O to Resp. Am. Ans.); *O'Sullivan v. Boerckel*, 526 U.S. 838 at 845-846 (1999) (Illinois state prisoners must present claims to Illinois Supreme Court before filing federal habeas claims). Respondent acknowledges that Bivens did raise the claim in the PLA he filed seeking review of his second postconviction petition, *see* PLA, *People v. Bivens* No. 88413 (Exh. W to Resp. Am. Ans.), but asserts that that presentment is insufficient under *Boerckel* because Bivens did not raise the claim in the second postconviction petition, raising it for the first time on appeal.

This is the only substantive claim (other than ineffective assistance of trial counsel) that Bivens addresses in his reply brief. Inexplicably, however, Bivens does not address respondent's argument that the claim is procedurally barred. Equally surprising is respondent's failure to assert what appears to be a more straightforward basis for barring Bivens's claim: his failure to present the claim in the state courts in constitutional terms. Regardless of whether Bivens's patchwork presentment "adds up," so to speak, to "one complete round of the State's established appellate review process," as required under *Boerckel*, 526 U.S. at 845 (likely it does not, but respondent cites no federal cases on point, other than *Boerckel* itself, which does not speak to this particular scenario), it is clear that Bivens failed to alert the state courts that his claim contained a constitutional dimension, and that alone precludes federal habeas review.

Under AEDPA, state prisoners must exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). Inherent in the exhaustion requirement is the petitioner's obligation to provide the state courts a full and fair opportunity to review all of his or her federal claims,

*Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). To determine whether a federal habeas petitioner fairly presented a federal claim involving constitutional issues in the state courts, the Seventh Circuit looks at four factors: "1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Ellsworth v. Levenhagen* 248 F.3d 634 (7th Cir.2001) (*citing Sullivan v. Fairman*, 731 F.2d 450, 454 (7th Cir.1984) and *Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir.1992). It is clear that Bivens did none of these.

In his brief before the Illinois Appellate Court on direct appeal, Bivens framed his claim as an error of state law and relied solely on state cases, citing *People v. Unger*, 66 Ill.2d 333, 362 N.E.2d 319 (Ill. 1977), *People v. Kalpak*, 10 Ill.2d 411, 140 N.E.2d 726 (Ill. 1957), *People v. Bratcher*, 63 Ill.2d 534, 349 N.E.2d 31 (Ill. 1976), and a state statute, Ill. Rev. Stat., Ch. 38 §§ 3-2, 7-11, and 7-13 (1984). Indeed, Bivens concluded his appeals argument with the statement: "<u>Unger</u> controls the disposition of this case." *See* Pet.'s App. Br., Exh. B to Resp. Am. Ans., at 16. All of the cases Bivens cited in his appellate brief were resolved on state law grounds, cite only state cases, and do not engage in any constitutional analysis. Moreover, the appellate court disposed of Bivens's claim on state law grounds. The first and second factors clearly cut against a finding that Bivens presented a constitutional claim. As to the third factor, although Bivens now alleges that the putative instructional error denied him a fair trial (presumably intended to invoke constitutional due process), he used no such language before the appellate court, and even if he had, "vague or cursory references to 'due process'" without more, are insufficient to alert a state court to the federal nature of a claim. *Verdin v. O'Leary*, 972 F.2d 1467, 1475 (7th Cir. 1992). As to the final factor, claims of instructional error do not typically recite a "pattern of

facts that is well within the mainstream of constitutional litigation," *id.*, at 1473-74, and Bivens's claim is no exception.

In sum, to the extent Bivens's claim of instructional error rests on state law, it does not support habeas relief. To the extent this claim now purports to assert a constitutional violation (Bivens does cite one Supreme Court case in his reply brief in this court), that claim is procedurally defaulted. In either event, Bivens is not entitled to habeas relief based on this claim.

3. Bivens's Successive Postconviction Petition Raised Sufficient Allegations to Merit an Evidentiary Hearing

Respondent asserts that this claim does not present a constitutional issue but rather alleges an error of state law. Bivens offers neither evidence nor argument to the contrary, and the court concludes that he is not entitled to habeas relief based on this claim.

4. Bivens's Postconviction Trial Counsel was Ineffective for Failing to Obtain Affidavits and Other Necessary Documentation to Support the Claims Raised on State Postconviction Review.

Respondent contends, inter alia, that this claim is statutorily precluded, citing 28 U.S.C. § 2254(i) : "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." The cited provision appears, on its face, to bar the very claim Bivens asserts, and Bivens offers nothing to support a contrary conclusion. He is not entitled to habeas relief based on this claim.

### III. CONCLUSION

For the foregoing reasons, Bivens's petition for a writ of habeas corpus is denied.

ENTER:

/s/ _____

                                        JOAN B. GOTTSCHALL
                                        United States District Judge

DATED:      December 29, 2008